# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY MEEKS, | CASE NO. 1:03-cv-6700-LJO-GSA |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY |
| JOHN PARSONS, | |
| Defendant. | (Doc. 93) |

Plaintiff Gary Meeks has moved for an order to compel four non-parties, (1) the California Department of Corrections and Rehabilitation ("CDCR"), (2) the Custodian of Records for CDCR, (3) CDCR Secretary Matthew Cate, and (4) the Chief Medical Officer of CDCR, to respond more fully to four subpoenas served on November 26, 2008. CDCR first objected to the subpoenas on behalf of all four recipients on December 10, 2008. After protracted negotiations between plaintiff and CDCR failed to lead to the production of a single page of evidence, plaintiff moved to compel discovery on April 10, 2009. After agreeing to continue the motion hearing to July 14, 2009, plaintiff and CDCR continued negotiations and ultimately submitted a Joint Statement of Discovery Disagreements.

This court heard argument from plaintiff and CDCR on July 14, 2009, July 28, 2009, and August 17, 2009, and allowed time for plaintiff and CDCR to meet and confer at various points in the course of each hearing. Plaintiff and CDCR continued to "meet and confer" between the hearings, submitting a joint status report before each hearing. After plaintiff and CDCR advised the court at the August 17, 2009 hearing that further negotiations would not be productive, they

submitted a joint proposed order on August 26, 2009. In light of the information and written materials submitted as discussed above, the court now enters this order.

**I.      Factual and Procedural Background**

In this civil rights action pursuant to 42 U.S.C. § 1983, plaintiff alleges Eighth Amendment claims of deliberate indifference to serious medical need. While plaintiff was incarcerated at Centinela State Prison ("Centinela") on January 5, 2002, another inmate assaulted him in an exercise yard, inflicting severe facial trauma including multiple fractures. After initial examination by Centinela medical staff, plaintiff was transferred first to a local hospital, then to the plastic surgery service at the University of California, San Diego ("UCSD"). Following surgery and fixation of plaintiff's mouth fractures, the UCSD physicians projected four to six week's recovery in the prison infirmary, followed by dental care, restorative dental surgery, and revisionary maxillary, mandibular and facial surgeries.

When plaintiff returned to Centinela late on January 7, 2002, defendant John Parsons, a physician at Centinela, admitted him to the infirmary and entered orders for his care. Thereafter, defendant provided plaintiff's continuing medical care. On or about March 10, 2002, both parties became aware that plaintiff's injuries were not properly healing, causing severe pain and complications. Nonetheless, defendant failed to request funding for necessary surgery, to prescribe a liquid diet, and to prescribe adequate pain relief medication. Plaintiff was unable to sleep or eat and lost weight.

Although CDCR finally approved plaintiff's treatment referral on June 11, 2002, defendant refused to place a medical hold on plaintiff to allow him to remain at Centinela to take advantage of it. As a result, on June 19, 2002, plaintiff was transferred to the California Substance Abuse Treatment Facility ("SATF") before the authorized treatment was administered to him. Since the treatment referral was not transferable to SATF, further treatment of plaintiff's injuries was delayed until January 2003.

Plaintiff advances two theories of defendant's liability. First, when it became clear after plaintiff's initial surgery that further surgery would be necessary, defendant failed to ensure that plaintiff received timely care. Plaintiff received the necessary second surgery only after he had

1  been transferred to SATF and after defendant was no longer treating him.  Second, defendant was
2  deliberately indifferent to plaintiff's medical needs when he permitted plaintiff's June 18, 2002
3  transfer to SATF even though defendant had the power to place a medical hold on plaintiff, block
4  the transfer, and continue the ongoing treatment by Centinela's medical staff and community
5  providers.  Plaintiff contends that defendant was aware of the inadequacy of CDCR's medical
6  facilities and knew that plaintiff would be unlikely to receive medical treatment for months after
7  his transfer.  Because defendant allowed plaintiff's transfer to proceed, plaintiff went to the "back
8  of the line" at SATF, waiting months for the opportunity to see a doctor and begin progress
9  toward a second authorization for his second surgery.

10  Plaintiff filed his complaint on November 26, 2003, against defendants Allison, DeGeus,
11  Parsons, and Klarich for acting with deliberate indifference to plaintiff's medical and dental
12  needs in violation of the Eighth Amendment.  On December 2, 2005, the district court adopted
13  Findings and Recommendations granting summary judgment to defendants.  Plaintiff appealed to
14  the Ninth Circuit on January 3, 2006.  On July 9, 2008, the Ninth Circuit affirmed the summary
15  judgment in favor of defendants Allison, DeGeus, and Klarich, but reversed and remanded as to
16  defendant Parsons.  *Meeks v. Allison*, 290 Fed. Appx. 4 (9th Cir. 2008).  This court reopened
17  discovery on November 20, 2008.  Discovery was scheduled to conclude on September 14, 2009.
18  Plaintiff and defendant have agreed to extend discovery as appropriate following the outcome of
19  plaintiff's motion to compel.

20  **II.     The Scope of Discovery from a Non-Party**

21  Federal Rule of Civil Procedure 34 governs discovery of designated documents,
22  electronically stored information, and designated tangible things, subject to the provisions of
23  F.R.Civ.P. 26(b).  *Fahey v. United States*, 18 F.R.D. 231, 233 (S.D.N.Y. 1955).  Federal Rule of
24  Civil Procedure 26(b)(1) establishes the scope of discovery, stating in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

1   Accordingly, under Rule 34, the test for admissibility is the relevance of the requested
2 material or information. *Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir. 1980); *White v.
3 Jaegerman*, 51 F.R.D. 161, 162 (S.D.N.Y. 1970). *See also Ceramic Corp. of Amer. v. Inka
4 Maritime Corp., Inc.*, 163 F.R.D. 584 (C.D.Cal. 1995).

5   "'Generally, the purpose of discovery is to remove surprise from trial preparation so the
6 parties can obtain evidence necessary to evaluate and resolve their dispute.'" *Moon v. SCP Pool
7 Corp.*, 232 F.R.D. 633, 635-36 (C.D.Cal. 2005), *quoting Oakes v. Halvorsen Marine Ltd.*, 179
8 F.R.D. 281, 283 (C.D.Cal. 1998). Accordingly, Rule 26(b) is liberally interpreted to allow
9 discovery of all information even though it may be inadmissible at trial. *Moon*, 232 F.R.D. at
10 635-36.

11   "The law [of discovery] begins with the presumption that the public is entitled to every
12 person's evidence." *Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388, 389
13 (N.D.Cal. 1976). A nonparty may be compelled to produce documents and tangible things as
14 provided in F.R.Civ.P. 45. F.R.Civ.P. 34 (c). Assuming that the subpoena is properly
15 constituted and served, Rule 45 requires the subpoena's recipient to produced the requested
16 information and materials, provided the issuing party "take[s] reasonable steps to avoid imposing
17 undue burden or expense." F.R.Civ.P. 45(c)(1) and (d)(1). The recipient may object to all or
18 part of the subpoena or move to quash or modify it. F.R.Civ.P. 45(c)(2) and (3).

19   Because a corporation is a distinct legal entity, a party cannot require another party who is
20 an officer or director of a corporation to produce corporate documents other than those he has in
21 his possession or those he has a legal right to obtain on demand. *American Maplan Corp. v.
22 Heilmayr*, 203 F.R.D. 499, 501-02 (D.Kan. 2001). Instead, the requesting party must obtain the
23 documents from the corporation by serving a subpoena pursuant to Rule 45. *Id.* at 502.

24   Federal Rule of Civil Procedure 45 governs subpoenas for the production of documents
25 (subpoena duces tecum) with or without the taking of a deposition. When a discovery request
26 takes the form of a third-party subpoena, the court may quash or modify a subpoena that
27 "subjects a person to undue burden." F.R.Civ.P. 45(c)(3)(A)(iv).
28 ///

"The fact that a party may disbelieve or disagree with a response to a discovery request . . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect." *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D.Ind. 1992). But if there is reason to believe that the response is incomplete or incorrect, the court may require a certification that the respondent "ha[s] conducted a search for the information reasonably available to them through their agents, attorneys, or others subject to their control and has[] determined that the information requested either does not exist or that it has been produced." *Id.* at 224. "Ordinarily, a sworn statement that a party has no more documents in its possession, custody or control is sufficient to satisfy the party's obligation to respond to a request for production of documents." *Id.*

"[I]f the documents sought are known to have been in the party's possession, custody, or control, it would not suffice for that party to simply disavow their existence without adequately explaining the disposition of the documents. Without such an explanation, the requesting party would be unable to "'determine whether to search elsewhere, or whether the only existing copies were destroyed, *652 thus making further search futile.'" *Superfilm of Amer., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 651 (D. Kan. 2004), *quoting Lone Star Steakhouse & Saloon, Inc. v. Liberty Mut. Ins. Group*, 2003 WL 21659662 at *2-*3 (D.Kan. June 4, 2003).

**III.   Scope and Documentation of Recipients' Search for Materials Responsive to Plaintiff's Subpoenas**

Despite this court's repeated admonitions at each of the three hearings of this matter, CDCR continues, it seems, to do no more than provide declarations that a few CDCR employees conducted perfunctory search of a few limited, yet undisclosed, locations. As a result of the extensive negotiations between the attorneys for plaintiff and CDCR, plaintiff has focused his subpoena requests, in some cases repeatedly, and has abandoned other requests. CDCR has produced a handful of miscellaneous general documents and an incomplete copy of plaintiff's unit health record.

CDCR asserts that it has retained none of the requested documents, such as plaintiff's inmate medical appeal requests, defendant's personnel records, records of internal complaints or

5

lawsuits against defendant, medical holds placed on transferring inmates, communications with its physicians, correspondence referencing the *Plata v. Schwarzenegger* (Case No. C01-1351 (N.D.Cal. 2001)) line of cases, and internal studies and analyses of CDCR's health care system. CDCR asserts that, even if it had maintained such records, looking for them would be too expensive and burdensome. CDCR's position is not well taken.

"A party responding to a Rule 34 production request . . . . .is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control." *Gray*, 148 F.R.D. at 223 (*citation and internal quotation marks omitted*). When the response is minimal and clearly omits materials from readily identifiable repositories likely to include some or all of the requested materials or information, the obvious conclusion is that the responding party has neither conducted a reasonable inquiry nor produced all documents within its possession, custody or control. *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D.Cal. 2006). Indeed, an earmark of a recipient's inadequate inquiry is the obvious absence of documents and other written materials that the recipient reasonably would be expected to have retained in the ordinary course of its business *Ibid.*

Responding simply that requested materials are "unknown" or "not maintained" is evasive and insufficient. *Gray*, 148 F.R.D. at 223. A recipient of a document production request "'cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control.'" *Ibid.*, quoting 10A *Federal Procedure*, Law Ed. § 26:377 at 49 (1988).

A recipient that is a large or complex organization or that has received a lengthy or complex document request should be able to demonstrate a procedure for systematic compliance with the document request. *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 552 (N.D.Cal. 1987). "[A reasonable] inquiry would [require], at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents . . . . . potentially possessing responsive information, and to account for the collection and subsequent production of the information to plaintiffs." *Id.* at 556. In a large or complex organization, a discovery

coordinator could be designated to distribute the discovery requests to the organization's various physical locations or departments, verify the sufficiency and veracity of each response, maintain appropriate records, and prepare a comprehensive response. *Id.* at 552. When appropriate, the discovery coordinator could appoint a subordinate coordinator for each department or location to oversee the search, verification and production to the discovery coordinator of responsive materials from his or her subdivision. *Id.* at 564. By means of an organized system of compliance, the recipient can demonstrate that it conducted a reasonable inquiry by providing plaintiff with declarations under oath detailing the nature of recipient's efforts to locate responsive documents, addressing each inquiry on a request-by-request basis. *A. Farber*, 234 F.R.D. at 190.

Similarly, when a recipient maintains that requested documents were purged in the ordinary course of business, it should provide declarations from the officers or employees who carried out the purges, attesting to the documents' destruction, the dates of destruction, and authority under which the purges were carried out. *See, e.g., National Ass'n of Radiation Survivors*, 115 F.R.D. at 546-47. A recipient's certification should include sufficient detail to demonstrate "that they have conducted a search for information reasonably available to them through their agents, attorneys, or others subject to their control and have determined that the information requested either does not exist or that it has been produced." *Gray*, 148 F.R.D. at 224.

Such coordinated and verified certifications are essential in this case. Although all concerned have adopted the shorthand of referring to the four subpoena recipients collectively as CDCR, plaintiff intentionally and with appropriate caution served subpoenas on four entities: (1) CDCR, (2) the Custodian of Records for CDCR, (3) CDCR Secretary Matthew Cate, and (4) the Chief Medical Officer of CDCR. So far, no response establishes that an adequate inquiry has been conducted by any of the four recipients. Each recipient must respond to its own subpoena, producing requested materials from within its own records, accompanied by appropriate declarations and documentation.

///

In addition, according to the docket for this case, plaintiff has been incarcerated in at least four CDCR institutions since the injury that is the subject of this action: Centinela, SATF, California State Prison at Corcoran ("CSPC"), and HDSP.[1]  An adequate inquiry must investigate likely repositories of responsive documents at each institution, including medical and custodial record rooms and offices, as well as the files of all litigation coordinators and similar administrators and staff.  Because plaintiff's unit health record is concededly incomplete, an adequate search should not disregard that duplicates or partial forms of it and other files or records intended to transfer from prison to prison with an inmate may exist in the prisons in which plaintiff has previously resided.  (For example, pursuant to CDCR Operations Manual § 91070.18.3, temporary files must be established upon discovery of any "loose clinical reports.")

Finally, CDCR has provided nothing to indicate adequate inquiry into files maintained within CDCR's central or regional administrative offices, as would be required in response to the subpoenas served on the Custodian of Records for CDCR,  CDCR Secretary Matthew Cate, and the Chief Medical Officer of CDCR.  This court will order an adequate search of all records and documents maintained by these recipients.  In light of CDCR's declaration of wholesale re-structuring of its record keeping practices since plaintiff was injured, these recipients' certifications of adequate search must address their respective inquiries for documents relevant to the time periods before and after the alleged reorganization of agency records as well as providing a brief but thorough explanation of both methods of organization of records.  If the recipients continue to claim the wholesale destruction of records from the time period pre-dating the reorganization, their certifications must fully document the timing, scope, circumstances, and legal or operational authority for the documents' destruction.

///
///
///

---

[1] The court acknowledges that plaintiff may also have been incarcerated in additional institutions that are not documented in court records.  If plaintiff was housed in any additional institutions since his injury, each such institution also requires adequate inquiry.

IV. **Disputed Document Requests**

A. **Plaintiff's Medical Records (Request No. 1)**

Plaintiff seeks "[a]ll Request for Medical Services Forms Mr. Meeks filed between March 1, 2002, and June 18, 2002; clear, color photographs of Mr. Meeks's injuries taken after he was assaulted on January 5, 2002; all records from Mr. Meeks's visit to UCSD on April 10, 2002; all records relating to Mr. Meeks's Inmate Appeal Form 602 appeal filed on May 7, 2002 regarding his medical treatment."

CDCR maintains that it has fully complied with this request. It reports that plaintiff's unit health record, in which requests for medical services are to be filed, contains no requests for medical services made between March 1, 2002 and June 18, 2002. CDCR supports its contention with the declaration of Debbie Christie, Health Record Tech., Supv., stating that she conducted a thorough search of plaintiff's unit health record and found no Request for Medical Services forms filed between March 1, 2002, and June 18, 2002. CDCR reports that it produced the requested color photographs on August 13, 2009.

According to CDCR, Christie located one UCSD report, dated April 10, 2002, in her review of plaintiff's unit health record. This document and a supporting declaration were produced on August 7, 2009. Following the July 28, 2009, hearing, Candi Cook, Health Program Specialist I/Dental Services Department, and Terry Kirby, Health Care Appeals Coordinator, AGPA, searched for documents relating to plaintiff's 602 appeal filed May 7, 2002, but found no documents. Cook and Kirby prepared declarations.

**Order:** The recipients have not conducted an adequate inquiry for documents responsive to this request. That certain documents are missing from plaintiff's unit health record does not establish that the missing records do not exist. Notably missing from the reports of the recipients is any indication that inquiry was made in any central location or at the four institutions at which plaintiff is known to have been incarcerated since his injury. Nor do the reports indicate any inquiry to determine whether, having become separated from plaintiff's unit health record, the missing documents were maintained in a temporary file, as required by CDCR Operations Manual § 91070.18.3 (2007). Accordingly, the four subpoena recipients are hereby **ORDERED**

to conduct a comprehensive inquiry for medical service requests made by plaintiff between March 1, 2002 and June 18, 2002, all records from plaintiff's April 10, 2002 visit to UCSD, and all records relating to plaintiff's May 7, 2002 Form 602 appeal; to adequately document the search procedures employed, the specific locations and files searched, and the specific individuals who conducted the searches; to set forth all legal and operational standards, including operational procedures specific to Centinela, governing the creation and maintenance of records relating to medical holds of inmates scheduled for transfer; and to prepare declarations under oath setting forth the facts of that documentation. Each recipient shall produce to plaintiff all responsive material identified during its comprehensive inquiry. If any recipient responds that it has destroyed its records relevant to the requested medical and appeal records, its certification must fully document the timing, scope, circumstances, and legal or operational authority for destruction.

### B. Complaints Against Defendant (Request No. 3)

Plaintiff seeks "[a]ll formal complaints lodged against Dr. Parsons from the beginning of his employment with the CDCR through June 18, 2002 and lodged pursuant to the Department of Corrections Form 602, complaints filed pursuant to the California Tort Claims act, and lawsuits filed against Dr. Parsons. This request includes non-public hearing transcripts and administrative orders relating to the resolution of those complaints."

Plaintiff contends that both parties agree that the request is reasonably narrow and discoverable. CDCR maintains that no records could be located, other than the names of four formal lawsuits filed against Dr. Parsons and known to CDCR, and that it has presented declarations from CDCR employees to that effect.

**Order:** The record does not clearly establish that any of the four subpoena recipients has conducted an adequate inquiry regarding actions brought against defendant beyond a search of unspecified scope at Centinela. Accordingly, the four subpoena recipients are hereby **ORDERED** to conduct a comprehensive inquiry for complaints filed against defendant, including Form 602 complaints, notices and actions filed pursuant to the California Tort Claims Act, and all other lawsuits or administrative actions; to adequately document the search

procedures employed, the specific locations and files searched, and the specific individuals who conducted the searches; to set forth all applicable legal and operational standards; and to prepare declarations under oath setting forth the facts of that documentation.  Each recipient shall produce to plaintiff all responsive material identified during its comprehensive inquiry.  If any recipient responds that it has destroyed its records relevant to the requested medical and appeal records, its certification must fully identify the destroyed material(s) and document the timing, scope, circumstances, and legal or operational authority for destruction.

### C. Medical Holds on Centinela Inmates (Request No. 10)

Plaintiff requests "[d]ocuments sufficient to show all Medical Holds placed on prisoners at Centinela State Prison between January 1, 2002 to January 1, 2003.  For example, a central log, roster, or list that shows all medical holds placed on prisoners at Centinela State Prison between January 1, 2002 and January 1, 2003.  Mr. Meeks does not intend this request to require a search through the records of individual inmates, but only for compilations, lists, or databases that might show the medical holds placed on prisoners in Centinela State Prison in the requested time frame."

Plaintiff maintains that this request is reasonably narrow, discoverable and not unduly burdensome.  CDCR responds that no such records exist, as documented by the declaration of Darinka Davis, who served as the Utilization Management Registered Nurse for Centinela in 2002.

**Order:** CDCR has not conducted an adequate inquiry for documents responsive to this request.  That the medical offices at Centinela kept no records of medical holds during the relevant time period does not establish that no such records were kept within CDCR.  For example, custody officers or administration, who presumably determined which inmates were to be transferred and administered those transfers, reasonably could have kept records of medical holds that postponed or obviated their transfer orders.  Medical records could also have been maintained by a variety of administrative departments in different locations throughout the state.  Accordingly, the four subpoena recipients are hereby **ORDERED** to conduct a comprehensive inquiry for records of medical holds placed on proposed transfers of Centinela inmates to other

institutions from January 1, 2002 through January 1, 2003; to adequately document the search procedures employed, the specific locations and files searched, and the specific individuals who conducted the searches; to set forth all legal and operational standards, including operational procedures specific to Centinela, governing the creation and maintenance of records relating to medical holds of inmates scheduled for transfer; and to prepare declarations under oath setting forth the facts of that documentation. Each recipient shall produce to plaintiff all responsive material identified during its comprehensive inquiry. If any recipient responds that it has destroyed its records relevant to such medical holds, its certification must fully identify the destroyed material(s) and document the timing, scope, circumstances, and legal or operational authority for destruction.

### D.  Communications Regarding Healthcare and Medical Facilities (Request No. 13)

Plaintiff requests "[a]ll communication between June 18, 2001 and June 18, 2002 between Dr. Parsons and the CDCR (defined for purposes of this requests as a central administrative officer or officer of the CDCR or the Chief Medical Officer or Health Care Manager of Centinela State Prison) regarding healthcare and/or medical facilities generally (as opposed to relating only to specific inmates) in California Prisons, including all studies, reports, newsletters, training materials, evaluations, surveys, research papers, analyses or any other material circulated."

The subpoena recipients agree to produce "any routine annual or semi-annual reports pertaining to healthcare and/or medical facilities generally, that were circulated between June 18, 2001 and June 18, 2002, that are in the possession of Health Care Services HQ personnel and are relevant to the standard of care." They insist that the standards of care are outlined in the Health Care Policy and Procedure Manuals already produced to plaintiff. The recipients further object to this request as being overbroad. Plaintiff responds that a limited request for correspondence between CDCR officers and administrators and defendant for a one-year period is a sufficiently targeted request.

**Discussion.** The court agrees with plaintiff. In determining whether a request is overbroad, the court must "ensure that the quest for discovery does not subsume other important

interests." *Richards of Rockford*, 71 F.R.D. at 390. Thus, in determining whether a request is overbroad, the court must weigh the costs of compelling discovery against the movant's asserted interest in the information sought. *Ibid.* "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes*, 179 F.R.D at 283; *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). A party that objects to a subpoena as overbroad or burdensome bears the burden of proving overbreadth or undue burden. *F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997).

The recipients fail to bear their burden, arguing not that the requested documents are too numerous or too expensive to produce, but that providing plaintiff with the Health Care Policy and Procedure Manuals should suffice to establish the applicable standard of care. In doing so, the recipients disregard plaintiff's intent to identify the specific information that was provided to defendant, as a means of determining what defendant should have known. The measure of overbreadth is the cost and undue burden to the subpoena recipient, not the recipient's judgment that the subpoena's proponent should be able to make its case with less than what was requested.

**Order.** Plaintiff's request, specifically tailored to time, subject and person, is not overbroad. The four subpoena recipients are hereby **ORDERED** to conduct a comprehensive inquiry for correspondence directed to defendant from CDCR, its Chief Medical Officer, or the Health Care Manager of Centinela on the topics set forth in the request and intended for dissemination to medical staff; to adequately document the search procedures employed, the specific locations and files searched, and the specific individuals who conducted the searches; and to prepare declarations under oath setting forth the facts of that documentation. Each recipient shall produce to plaintiff all responsive material identified during its comprehensive inquiry. If any recipient responds that it has destroyed its records relevant to the requested medical and appeal records, its certification must fully identify the destroyed material(s) and document the timing, scope, circumstances, and legal or operational authority for destruction.

///

///

### E.     Communications to Centinela's Supervisor(s) (Request No. 14)

Plaintiff requests "[a]ll Communication between June 18, 2001 and June 18, 2002 between the CDCR (defined for purposes of this request as a central administrative office or officer of the CDCR) and either the Chief Medical Officer or the Health Care Manager of Centinela State Prison regarding the general (as opposed to relating only to specific patients) topics of access to healthcare, the adequacy or inadequacies of medical facilities, medical holds, and/or the continuation of medical treatment following the transfer of prisoners in California Prisons, including all studies, reports, newsletters, training materials, evaluations, surveys, research papers, analyses or other material circulated regarding those topics."

Plaintiff explains that the request's intent is to secure correspondence from CDCR administrators and officials to health care supervisors that was intended to be disseminated to all members of the healthcare staff.  The recipients again object that the request is overbroad, arguing that plaintiff has copies of the Health Care Policy and Procedure Manuals, which set forth standards applicable to health care, transfers, and medical holds.  Recipients also offer to produce any general annual or semi-annual reports pertaining to health care or medical facilities. As was the case in their response to Request No. 13, the recipients base their argument not on the cost or burden of producing the requested material, but on what materials are readily available. That is not the standard for overbreadth.

**Order.**  Plaintiff's request, specifically tailored to time, subject and person, is not overbroad.  The four subpoena recipients are hereby **ORDERED** to conduct a comprehensive inquiry for correspondence directed to Centinela's Health Care manager or Chief Medical Officer from  CDCR or any central administrative officer of CDCR on the topics set forth in the request; to adequately document the search procedures employed, the specific locations and files searched, and the specific individuals who conducted the searches; and to prepare declarations under oath setting forth the facts of that documentation.  Each recipient shall produce to plaintiff all responsive material identified during its comprehensive inquiry.  If any recipient responds that it has destroyed its records relevant to the requested medical and appeal records, its certification

///

must fully document the timing, scope, circumstances, and legal or operational authority for destruction.

### F. Communication to Defendant Referencing *Plata v. Schwarzenegger* (Request No. 17)

Plaintiff requests "[a]ll communication between June 18, 2001 and June 18, 2002 between the CDCR (defined for purposes of this request as a central administrative office or officer of the CDCR or the Chief Medical Officer of Health Care Manager of Centinela State Prison) and Dr. Parsons referencing the case *Plata v. Schwarzenegger*, Case No. C01-1351 (N.D. Cal. 2001)."

The recipients object to this request as overbroad, arguing that providing plaintiff with the Health Care Policy and Procedure Manuals should sufficiently establish the applicable standard of care. Plaintiff does not seek the *Plata* correspondence to establish the standard of care but to provide evidence of defendant's knowledge of the conditions of health care throughout California's prisons. Once again, the recipients have confused overbreadth with what appears to be an interest in producing as little as possible.

**Order.** Plaintiff's request, specifically tailored to time, subject and person, is not overbroad. The recipients are hereby **ORDERED** to conduct a comprehensive inquiry for correspondence directed to defendant from Centinela's Health Care manager or Chief Medical Officer, CDCR or any central administrative office or officer of CDCR regarding *Plata v. Schwarzenegger*; to adequately document the search procedures employed, the specific locations and files searched, and the specific individuals who conducted the searches; and to prepare declarations under oath setting forth the facts of that documentation. Each recipient shall produce to plaintiff all responsive material identified during its comprehensive inquiry. If any recipient responds that it has destroyed its records relevant to the requested medical and appeal records, its certification must fully document the timing, scope, circumstances, and legal or operational authority for destruction.

///

///

**G.     Communications to Centinela's Supervisor(s) Re: *Plata* (Request No. 14)**

Plaintiff requests "[a]ll communication between the CDCR (defined for the purposes of this request as a central administrative office or officer of the CDCR) between June 18, 2001 and June 18, 2002 and either the Chief Medical Officer or the Health Care Manager of Centinela State Prison referencing the case *Plata v. Schwarzenegger*, Case No. C01-1351 (N.D. Cal. 2001)."

As was the case with the general medical correspondence to supervisors sought in Request No. 14, this request is intended to elicit correspondence regarding *Plata* sent to health care supervisors but intended to be disseminated to all members of the health care staff. The recipients again object that the request is overbroad, arguing that plaintiff has copies of the Health Care Policy and Procedure Manuals, which set forth standards applicable to health care, transfers, and medical holds.

**Order.** Plaintiff's request, specifically tailored to time, subject and person, is not overbroad. The four subpoena recipients are hereby **ORDERED** to conduct a comprehensive inquiry for correspondence directed to Centinela's Health Care manager or Chief Medical Officer from any central administrator or officer of CDCR regarding *Plata* and intended for dissemination to medical staff; to adequately document the search procedures employed, the specific locations and files searched, and the specific individuals who conducted the searches; and to prepare declarations under oath setting forth the facts of that documentation. Each recipient shall produce to plaintiff all responsive material identified during its comprehensive inquiry. If any recipient responds that it has destroyed its records relevant to the requested medical and appeal records, its certification must fully document the timing, scope, circumstances, and legal or operational authority for destruction.

**H.     Defendant's Compensation (Request No. 20)**

Plaintiff requests "[d]ocuments sufficient to show the manner in which Dr. Parsons was compensated between January 1, 2002 and January 1, 2003, including but not limited to documents sufficient to show if he was a salaried employee, a contractor, his potential for

///

overtime, potential for bonuses, his potential to earn any other form of compensation, and his benefits."

Plaintiff seeks the requested information to establish that defendant had no incentive to spend adequate time treating plaintiff. The subpoena recipients argue that the information is available from other sources.

**Discussion**. Federal Rule of Civil Procedure 26(b) authorizes the court to limit the frequency or extent of discovery under F.R.Civ.P. 34 if the court determines that the discovery sought is unreasonably cumulative or duplicative. In hearings before the court, the recipients argued that this information should be available from defendant, and plaintiff countered that his request sought documentary evidence to confirm or deny defendant's testimony regarding his terms of employment. A responding party generally may not refuse to provide discovery because the proponent of the request already has knowledge of the existence or contents of the requested documents. *M.L.C., Inc. v. North American Philips Corp.*, 109 F.R.D. 134, 139 (S.D.N.Y. 1986); *Alvarez v. Wallace*, 107 F.R.D. 658, 660 (W.D.Tex. 1985). A party seeking discovery is entitled to obtain documentary proof of facts that it already suspects of knows. *Alvarez*, 107 F.R.D. at 660.

**Order.** The four subpoena recipients are hereby **ORDERED** to conduct a comprehensive inquiry for documentation of the terms of defendant's employment as detailed in Request No. 20; to adequately document the search procedures employed, the specific locations and files searched, and the specific individuals who conducted the searches; and to prepare declarations under oath setting forth the facts of that documentation. Each recipient shall produce to plaintiff all responsive material identified during its comprehensive inquiry. If any recipient responds that it has destroyed its records relevant to the requested medical and appeal records, its certification must fully document the timing, scope, circumstances, and legal or operational authority for destruction.

**I.    Reports on Centinela and SATF (Request No. 21)**

Plaintiff requests "[a]ll reports, studies, evaluations, surveys, research papers, or analyses by the CDCR dating from the time period January 1, 2002 to January 1, 2003 of the general (as

opposed to specific patients) topics of access to healthcare, the adequacy or inadequacies of medical facilities, medical holds, and/or the continuation of medical treatment following the transfers of prisoners in California Prisons, in either Centinela State Prison or California Substance Abuse and Treatment Facility at Corcoran.  This request is not intended to cover informal notes or informal correspondence, but only final copies (or, in the case finals cannot be located, the latest available draft) of reports, studies, evaluations, surveys, research papers, or analyses.  This request includes, but is not limited to, periodic reports (such as a quarterly or annual report) on the healthcare systems at the two prisons identified."

Plaintiff seeks evidence tending to establish (1) that access to healthcare at SATF was inadequate and that plaintiff's transfer to SATF delayed his treatment, and (2) that defendant knew that medical care at SATF was inadequate or was aware of the risk that medical care at SATF would be inadequate.  The recipients again object that the request is overbroad, arguing that plaintiff has copies of the Health Care Policy and Procedure Manuals, which set forth standards applicable to health care, transfers, and medical holds.  Recipients provide no other support for their assertion of overbreadth.

**Order.**  Plaintiff's request is not overbroad.  The four subpoena recipients are hereby **ORDERED** to conduct a comprehensive inquiry for reports addressing medical facilities, care and treatment as detailed in Request No. 21; to adequately document the search procedures employed, the specific locations and files searched, and the specific individuals who conducted the searches; and to prepare declarations under oath setting forth the facts of that documentation.  Each recipient shall produce to plaintiff all responsive material identified during its comprehensive inquiry.  If any recipient responds that it has destroyed its records relevant to the requested medical and appeal records, its certification must fully document the timing, scope, circumstances, and legal or operational authority for destruction.

    **J.**    **Reports on all California Prisons (Request No. 22)**

Plaintiff requests "[a]ll reports, studies, evaluations, surveys, research papers, or analyses by the CDCR dating from the time period January 1, 2002 to January 1, 2003 of the general (as opposed to specific patients) topics of access to healthcare, the adequacy or inadequacies of

medical facilities, medical holds, and/or the continuation of medical treatment following the transfers of prisoners in California Prisons.  This request is not intended to cover informal notes or informal correspondence, but only final copies (or, in the case finals cannot be located, the latest available draft) of reports, studies, evaluations, surveys, research papers, or analyses.  This request includes, but is not limited to, periodic reports (such as a quarterly or annual report) on the healthcare system at the entire CDCR."

As was the case in Request No. 21, plaintiff seeks evidence tending to establish defendant's knowledge of medical conditions in California prisons and CDCR's culture of non-accountability in health care.  The recipients again object that the request is overbroad, arguing that plaintiff has copies of the Health Care Policy and Procedure Manuals, which set forth standards applicable to health care, transfers, and medical holds.  Recipients provide no other support for their assertion of overbreadth.

**Order.**  The recipients are hereby **ORDERED** to conduct a comprehensive inquiry for reports addressing medical facilities, care and treatment at all California prisons as detailed in Request No. 22; to adequately document the search procedures employed, the specific locations and files searched, and the specific individuals who conducted the searches; and to prepare declarations under oath setting forth the facts of that documentation.  Each recipient shall produce to plaintiff all responsive material identified during its comprehensive inquiry.  If any recipient responds that it has destroyed its records relevant to the requested medical and appeal records, its certification must fully document the timing, scope, circumstances, and legal or operational authority for destruction.

**V.   Additional Provisions.**

In addition to the provisions specific to each subpoena request set forth above, this court hereby **ORDERS** the following:

A.   Plaintiff's Motion to Compel is hereby granted under the terms outlined above.

B.   The four recipients are hereby ordered to complete their adequate searches and production of documents responsive to their respective subpoenas within thirty days of the date of this order.

C.  Notwithstanding that discovery in this matter was to have closed September 14, 2009, plaintiff shall be entitled to bring such motion(s) as are necessary to enforce the terms of this order.

D.  Notwithstanding that discovery in this matter was to have closed September 14, 2009, plaintiff shall be entitled to move to establish a revised date for the close of discovery and such other revision(s) as may be necessary to amend the scheduling order in light of this order compelling production. Such revisions may include, but are not limited to, supplementation of expert reports or supplemental expert depositions.

IT IS SO ORDERED.

Dated:   **September 18, 2009**            /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE